We'll take our third case on the docket. Kincaid v. Unified School District 23-3004.  My name is Hank Curry. I'm here on behalf of Cassandra Kincaid. She was an assistant principal in Kansas City, Kansas Middle School. The reason we're here today is that while she was at school, it was relayed to her by a counselor that a young lady reported being pressed up against a wall and sexually assaulted. So Ms. Kincaid, as assistant principal, began an investigation, reviewed some video, interviewed the young woman, and informed the school district's student services office what happened to get some guidance, and then looped in her boss, her supervisor, Principal Scretta. So that all happened on one day. Approximately a week later, Principal Scretta hands her a letter of concern, which I refer to as a written reprimand throughout the brief. That's why she filed a Title IX, Title VII retaliation case. We contend that the district court erred in granting summary judgment on that case. Did you concede that you don't have a Title VII case here? Oh, no, I'm not conceding it, Your Honor. Well, how do you have one? There has to be activity that was protected under Title VII. And reporting student-on-student misconduct just isn't covered by Title VII, is it? On that issue, I do concede, and concede that in the brief, that the student-on-student initial act itself- So how do you get Title VII retaliation here? What's the protected activity under Title VII? So the protected activity under Title VII would be Ms. Kincaid's opposition to what she perceived as Dr. Scretta's harassment of her. Counsel, but don't you have to prevail on your motion to amend the pre-trial order issue in order to get there? Yes, Your Honor, we do. I mean, so to go to both of your questions, it's a two-piece case, right? For us to win on Title VII, we've got to win two things. We've got to show that there was evidence to pretext, and we have to get some of those described in the pre-trial order back into the case so I can talk about this protected activity. So can I ask you some questions about your pre-trial order argument? So is it your contention that the district court made a legal mistake in sort of the rule that it applied in construing the pre-trial order itself? In other words, did it construe it too narrowly, and our jurisprudence perhaps requires it to have a more liberal construction? Yes, Your Honor, I believe that the Law Co. Inc. case is the controlling case here. And in that case, they stated that if it's contained within the, if the factual theory is within the pre-trial order, then it should be able to talk about, we should be able to talk about it. In this case, every protected activity that we allege is protected activity under Title VII was listed in the pre-trial order. So where I'm getting stuck is in the legal claim section of your pre-trial order, you use the word specifically to specifically call out the theory that you're now conceding does not constitute the predicate for your claim. Does that, how should we be thinking about that? I mean, it seems like specifically points us in a certain direction. What, what is your take on, on my question? My take on that is, I wish specifically wasn't in there, but I think that the, when we were listing out those legal claims, it was a one sentence per legal claim. And clearly, you know, in, in the kind of the rough and ready of a rough and tumble of a deployment case, it was often frequently people going back over and over and over again with repeated protected activities, all flowing from the original moment. And so I think as a shorthand, you know, here's where it starts. This is where we've seen the first protected activity was, but in the facts that, you know, just became before that, we were laid out, you know, how she had gone back to HR, various aspects in various places trying to get relief. So, you know, I think it was a, I think that it was contained within the pre-trial order itself. The facts we're talking about specifically, it was, we were hoping at the time that student did qualify. I still don't understand where this, where the Title VII protected activity is. You started to say that and you said, well, she complained to the principal. Okay. Where's that come under Title VII? After she found out she was going to get that written reprimand. Yeah. She went to HR, both met with them several times, sent them a letter laying out both her problems with getting the right reprimand and what she perceived as harassment in bullying from. And you're saying that that's protected activity under Title VII? Yes, Your Honor. Why? I think she perceived it. What is the discrimination under Title VII that she's complaining about? It would be harassment. It'd be harassment on the basis of gender, harassment on the basis of. Did she, so now she's saying she was discriminated against based on gender. Yeah. I think there's some evidence in the case of that. Was that ever alleged that that was what was going on? Yeah. I think she, I mean, eventually she filed an EEOC complaint that alleged. How about in this case? Yeah. In this case. In this case, she alleged that she was discriminated against based on gender. That would be a Title VII discrimination claim, not an harassment claim. You know, you caught me. I think it's, and I don't have the EEOC complaint. I wasn't trying to catch you. No, I know, but you're, and I, let me, if I don't want to make a mistake here. She did file an EEOC complaint about this issue. I can't remember if she talked about check the box gender, just retaliation of that. But I know that we presented evidence in this case that she was concerned about being treated differently on the basis of gender. That actually was a question I was going to ask you, which is how we're supposed to think about the EEOC charges, because typically, you know, it's not jurisdictional. We look at that to sort of think about what's fair game in the federal case. The EEOC charge was specific to the student-on-student harassment that you're conceding is not a basis for your claim, right? The case law, and I don't have the case on my note here, but it's, supposedly, under intense circuit, anything that rationally will kind of grow from your initial report to the EEOC is what is considered exhausted when you make that claim. And in this case, you know, she originally did talk about the student-on-student. That was the precipitating event. But in the year and a half that followed, when she went back again and again, things kept happening. That would have been swept into the investigation. Let's go to Title IX. Okay. I think Title IX is definitely the stronger footing for this case. And our best evidence of pretext that I'd like to draw your attention to is that written reprimand itself. Did you argue pretext in the Title IX claims in district court? Yes, Your Honor. We did. Why did you do that? There were explanations given by the school district for the adverse actions against her. And did you argue that any of those were pretextual in the district court? Yes, Your Honor. We did. Starting with the written reprimand, we argued that there were inconsistencies and contradictions with that written reprimand. We argued that there was procedural irregularities. We argued that there was a stepped discipline program that was not applied and should have been. And we argued that... Where did the district court then go off the rails? Is there one particularly egregious error that you can point me to? Or is it just the gestalt, the totality of the analysis? Is that the problem? I think the particularly egregious error comes with the written reprimand analysis. Because it's there, we have a paragraph in our summary judgment opposition that lays out all the pertinent case law. It says different ways you can show pretext. And when we get to the written reprimand section, we lay out the facts that we put established in our statement of facts. Some of them are... Look, some of the reasons that Principal Skrada for giving this written reprimand weren't true. Again, we had lots of different sources of evidence for that. The district court characterized said, hey, Mr. Kerry, you did not come forward with inconsistencies and contradictions that would show this is not an honest belief. But in fact, we had. We'd laid it all out both factually and argued it in the brief. In that same paragraph, coming from the case law about procedural irregularities. Also, our way to show pretext, we pointed out there were procedural irregularities. When you give a written reprimand like this, you're supposed to point to a policy that was broken. He couldn't do that. That shows that perhaps it wasn't an honest belief that she'd done something wrong. We argued that the written reprimand itself has contradictions built into it. One of the reasons he said that she deserved this written reprimand was that he didn't come to her first before reporting sexual assault. But in the written reprimand, it says, and you know, I instituted this policy after you did that, right? I mean, it's like he's trying to hang her on something that wasn't a rule yet. So I think that suggests that this written reprimand had some problems. You also have the corporate rep's testimony on some of these issues that were, I think, was somewhat powerful. We pointed that out that the corporate rep said, this reprimand should have never been issued under the graduated discipline policy. The way that assistant principal Cassandra Kincaid told the grandmother, we're going to work with your kid. We're going to find some counsel. And that was okay. I mean, we had evidence of children's weaknesses and impossibilities in this written reprimand. So I think the court missed that or didn't discuss that in holding that there was no pretext there. Now, I think that there's what I'd call a long tail of retaliatory harassment flowed from that written reprimand. And there were, I think the general idea here for us is that we did have evidence that Cassandra Kincaid- Can we really infer sex discrimination from, can we infer sex discrimination from that? I mean, is there any evidence that she was targeted for this reprimand because of her sex? No, your honor, I don't believe so. I think that this is a retaliation stemming from the protected activity of reporting the sexual assault. That's what's in this written reprimand. That's what he's talking about in there. How should we be thinking about your arguments concerning sort of this unwritten progressive disciplinary policy? I think it's the, is it Timmerman case? Is that, let me see. Did I get that right? I think it's one, yet maybe a third category of a reason why that written reprimand was pretextual in that it, and this is, the district admits that there was a policy they had to do progressive discipline. It wasn't followed. So this written reprimand should have never been issued. There's case law that says that's evidence of pretext. That's what we had here. I think also functionally, it does suggest like, not just theoretically, but functionally suggests that this written reprimand wasn't really about, you know, trying to get her to come to him first or something like that. It wasn't really about how she handled this affair. It was to get her in trouble because he was mad at her for what she did. And that's ultimately what we're trying to prove here is retaliatory intent. And I think that this failure to follow a progressive discipline policy helps us establish that. I think I'll, if it's okay, I'll reserve the rest of my time. Thank you. Mr. Govine. May it please the court. Your honors, I'm here today on behalf of the unified school district number 500 in connection with this appeal. And I want to start my argument by taking sort of a thousand foot view picture of this case and say that not every case, not every disagreement among employees of the school district warrants a federal lawsuit involving allegations of retaliation under your title seven or title nine. As we sit here today, Ms. Kincaid is still the assistant principal in the school district and has remained in that position since the time this complaint was filed. Dr. Scruton, who was the principal at the time of whom she complained about, is no longer with the district and was separated from the school district. None of those facts are before us though, right? No, it's just the big picture of sort of where we're at. That's a big picture I think we should ignore, don't you think? You're certainly entitled to do so. The reason that this case came forward and the reason that they focus on this notion of this title seven versus title nine, which also gets into the amendment of the pretrial order, there's no basis for a title seven case in this lawsuit. The allegations or the things that Ms. Kincaid complains about are clearly not the types of activities that are protected under title seven. I'll concede their activities would be protected under title nine. Yeah, you need to address title seven, focus on title nine. What's that? Focus on title nine, I think. Okay, I will focus on title nine. So the real issue then we have with the title nine and I think counsel has sort of narrowed in on this issue of this letter, this reprimand letter as he refers to it. It's actually called a letter of concern. Part of the factual narrative that was left out of the initial introduction by counsel is that this was not the first incident that occurred between this student and another female student in that school building. There was an earlier incident in February and that did not come to light. It was not presented to the principal until after the second report was made in March. And if you read the letter of concern and it's in the record and I encourage the court to look at that letter. Certainly the district court looked and read that letter. That letter says two things in context. One, to Ms. Kincaid, you made a mistake by not properly reporting the first incident in February. That's what it says. The second thing it says is that I also have talked to you about this and I wanna make it clear that if this type of incident occurs in the school building, I would like for you to report it to me, Dr. Stratton first before reporting it to student services or some other place within the district. So I don't think that that constitutes a letter of reprimand or necessarily discipline in the sense that is being set forth here. If you read the testimony that's cited and is in the record, both the district court relied on this, we placed it in our brief where you talk about even the investigator or other administrators went back and looked at that letter of reprimand. They might've disagreed with that second part of it whether it should be reported to student services or not, but they all clearly felt that the failure to report properly the first incident did in fact warrant some correction or some corrective action taken against the assistant building principal in that context. And I think that kind of brings the whole picture into place. It's difficult to establish pretext, which is primarily where the district court said that the plaintiff fell down. When the actions that were taken by the school district were perfectly warranted within the context of the factual information that was presented to them. If you walk through the different things that are complained about by the plaintiff in this case, each one of them has a legitimate basis. Most of the time, that is reflected in the actual documentation that the plaintiff received, whether it was an email, whether it was that letter of concern. And those things sort of in and of themselves establish a justification for why they were taken. She was cautioned or requested to make sure that she notified the principal if the 911 was called from the school building. I went to both her and to the other assistant principal. There was an allegation that the fire, there was an allegation, the fire alarm was pulled one day when the building principal wasn't present. He sends an email and says, if the fire alarm is called, hold on while I'm not here, please let me know. Those are not the types of things that would constitute retaliation in the sense of actually having a material adverse impact on her employment. She contends that Dr. Strada was an individual that was not professional, that was rude to her, that didn't share information with her. But the record reflects that those same types of complaints were being made by other employees in that building, including the other assistant principal who had not engaged in protected activity under Title IX. The record reflects that those types of activities and disagreements between plaintiff and Dr. Strada had occurred before she had made her complaint or not before she made a complaint, but before she had made this report of this sexual assault by this student on student situation. So there's a difference between behaviors that are maybe, not, I don't wanna use the word not appropriate for the workplace, but that are rough or harsh or perhaps not as professional as we would like them to be. And activities or things that are actually retaliation for making a report of discrimination or believed violation of Title IX, which I think is what the allegation in this case is. And I think the district did a good job of walking through each of the alleged issues that formed the basis for the Title IX complaint or the Title IX retaliation complaint. But she didn't violate any specific district policy, did she? I mean, is there a particular policy that you can point to that would be the basis for concern or reprimand? Certainly there was an expectation, if not a policy, and I think there was a policy that might be in the record, but certainly an expectation that if there is a incident involving sexual harassment or sexual assault by one student against another student, that that is reported and reflected in the student disciplinary record. And in this case, it's clear she did not do that at the time it occurred in February. She later then added that information to the disciplinary record in March when the second incident occurred. So that was something that was a definite expectation of all building level administrators. And where am I going to find that expectation? I think it was in the record, and I think even she acknowledged that that was the case. Her disagreement was that she did not feel or believe, if I'm paraphrasing, I believe her argument was that she did not believe the first incident warranted or fell within the definition of a sexual assault, whereas she thought the second incident did. But there was certainly a sexual context to the first incident, and the belief of the principal was that that was something that warranted reporting. She took notes on it, but did not incorporate those or put those into the student record until a later point, indicated that she had told the grandparent of the student who had committed the assault that she wouldn't do so unless something else happened. And that's something that should be reflected so that other administrators were aware of the propensity by the first student of the issue, particularly in this situation, because there was, as you can tell from the record, it was a pattern of the student engaged in further inappropriate conduct down the road. And so the district is very important for them to be able to prevent sexual harassment from one student to another student, to be aware of that when the first time it happens, and not just have that one person be aware of it, but have the building administration as a whole aware of that type of behavior. So in terms of going through the actual explanation of each, as I indicated, I think there were several places, and we've outlined this in our brief, where council didn't even address the issue of pretext as it related to specific types of allegations of behavior that he claims, or they claim, create a basis for retaliation. And I think that the district court pointed that out. I think that we pointed that out. And I think that those are foreclosed on appeal at this point in time. And as I said at the beginning, leaving out the context of where we're currently at, not every case constitutes a discrimination or retaliation case. And this is one of those situations where you can make criticisms of how it was handled, perhaps. But I don't think there's any evidence of any retaliatory intent by the school district against Ms. Kincaid or anything that happened in this case. She continues to be... Council, would you mind, with my colleague's permission, switching gears to the Title VII, I do have a question about the pretrial order. Why would you have been surprised if the pretrial order was amended to include facts that are listed in the pretrial order? I think the facts are in the pretrial order. And I think the facts are... I think we pointed that out both in our briefing here and to the district court, that those facts are fair game at the trial. I think the issue is, to the extent that those facts are now attempting to be argued as a different basis or a different claim for Title VII, rather than what was actually presented as the Title VII claim throughout. Both at the EESC level, at the complaint that was filed with the court, in discovery, and in the pretrial order, the claim has always been the Title VII retaliation, just like the Title IX retaliation is based upon Ms. Kincaid having reported this sexual assault by the student in March of 2019. And it's the departure from that factual basis and that legal basis for the claim. This is what we're predicating our claim on. Well, that steered discovery, that steered our summary judgment arguments. You recall from the briefing and the court's order that it was over a month after we had submitted our summary judgment brief was the first indication we had that the Title VII claim was now going to be based upon some other factor other than reporting of this complaint. And that is surprise, that is prejudice. At that point in the process, the facts were there, I mean, that they're now trying to point to. But from our understanding, those were sort of evidence of the retaliatory conduct of the Title IX context. That's how we view that. And that's how I think the district court viewed that as well. And with that, Your Honor, those are the questions. I think I'll close my argument. Thank you, counsel. Thank you very much. Appreciate it. You did have some time. Good. Thank you. I wanted to address quickly that on the retaliatory harassment that we described in our case flowing from Title IX, we did argue at summary judgment that that harassment was more directed toward Cassandra Kincaid than all of the other employees at that school working under Principal Scretto. So the school districts articulated this Principal Scretto as an equal opportunity, bad leader. It was bad to everybody. But we have witness testimony, our clients, you know, Cassandra Kincaid's own testimony and the school district's own investigation or three other witnesses who volunteered that Cassandra Kincaid is getting the brunt of this kind of behavior. So I think that does show that the explanation ventured by the school district that he was just an equal opportunity offender is pretextual because he was directing more of it to Cassandra Kincaid. On the fire alarm drill email, we did present evidence of pretext on that issue too. That was because there were two assistant principals comparators and he directed this letter to one of them, Cassandra Kincaid, and not the other. Cassandra Kincaid wasn't even charged in the building at the time that fire alarm went off. So that is, when you show it, you know, two equally situated people, one is reporting sexual assault, one hasn't, one gets picked on, one doesn't. That's a way to show pretext. That's what we did there on that particular letter. The last thing is on that written reprimand. The testimony from the corporate representative was that it was a written reprimand. It wasn't something short of that. It really was written reprimand. It should not have gone in the file, but Principal Scretta insisted that it did over the caution of his own boss that was at the meeting. So there's some irregularities there, but he made it into a written reprimand at that moment. It wasn't justified. I'm, now I'm out of time. Thank you. Thank you, Council. Cases submitted.